MHS/2023R00813

FILED BY _____ MP _____ D.C.

**Jan 11, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
- - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

KAREEM MEMON,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - X

Hon. (MEF)

Cr. No. 24-17

SDFL Case # 24-cr-60004 Smith/Augustin-Birch

## Consent to Transfer of Case for Plea and Sentence
### Pursuant to Fed. R. Crim. P. 20

     I, Kareem Memon, defendant, have been informed that an Information is pending against me in the above-designated case. I wish to plead guilty to the offenses charged, to consent to the disposition of the case in the Southern District of Florida, where I am present, and to waive trial in the above-captioned District.

Dated: January 2, 2024

_____
Kareem Memon

_____
Witness

_____
Brian Silber, Esq.
Counsel for Kareem Memon

Approved:

_____
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515,
for the District of New Jersey

_____
United States Attorney for the
Southern District of Florida

Query     Reports     Utilities     WorkFlow     Schedule     Help     What's New
Log Out

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CRIMINAL DOCKET FOR CASE #: 2:24-cr-00017-MEF-1

Case title: USA v. MEMON                          Date Filed: 01/10/2024

---

Assigned to: Judge Michael E. Farbiarz

**Defendant (1)**

**KAREEM MEMON**                    represented by **BRIAN SILBER**
916 SOUTH ANDREWS AVENUE
FORT LAUDERDALE,, FL 33316
1954-462-3636
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**                                   **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                                **Disposition**
18-1349 CONSPIRACY TO COMMIT
HEALTH CARE FRAUD (dof- from 2017-
2020)
(1)
18:371 CONSPIRACY TO VIOLATE THE
FEDERAL ANTI-KICKBACK STATUTE
(dof- from 2017-2020)
(2)

**Highest Offense Level (Terminated)**
Felony

**Complaints**                                       **Disposition**
None

---

**Plaintiff**

**USA**                              represented by **MATTHEW SPECHT**
DOJ-USAO
DISTRICT OF NEW JERSEY

970 BROAD STREET
ROOM 700
NEWARK, NJ 07102
973-353-6061
Email: matthew.specht@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2024 | 1 | CONSENT TO TRANSFER JURISDICTION (Rule 20) to SOUTHERN DISTRICT OF FLORIDA by KAREEM MEMON. (JB, ) (Main Document 1 replaced on 1/10/2024) (JB, ). (Additional attachment(s) added on 1/10/2024: # 1 Information) (JB, ). (Additional attachment(s) added on 1/10/2024: # 3 Cover sheet) (JB, ). Modified on 1/10/2024 (mfr). (Entered: 01/10/2024) |
| 01/10/2024 | | Notice of Allocation and Assignment setting plea agreement hearing as to KAREEM MEMON for 2/20/2024 at 02:00 PM before Judge Michael E. Farbiarz. (JB, ) Modified on 1/10/2024 (JB, ). (Entered: 01/10/2024) |
| 01/10/2024 | | Notice of Allocation and Assignment setting plea agreement hearing as to KAREEM MEMON for 2/6/2024 at 02:00 PM before Judge Michael E. Farbiarz. (JB, ) (Entered: 01/10/2024) |
| 01/10/2024 | | Please disregard the setting of plea hearing as to KAREEM MEMON this case is a Rule 20 Transfer out to Southern District of Florida: (mfr) (Entered: 01/10/2024) |
| 01/10/2024 | 2 | INFORMATION as to KAREEM MEMON (1) count(s) 1, 2. (JB, ) (Entered: 01/10/2024) |
| 01/10/2024 | 3 | Transmittal Letter re: 1 Rule 20 - Transfer Out to the District of Southern Florida. (JB, ) (Entered: 01/10/2024) |



**U N I T E D   S T A T E S   D I S T R I C T   C O U R T**
D I S T R I C T   O F   N E W   J E R S E Y
O F F I C E   O F   T H E   C L E R K
M. L. KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-3730

Melissa E. Rhoads
Clerk

CAMDEN OFFICE
ONE JOHN F. GERRY PLAZA
FOURTH & COOPER STREETS
CAMDEN, NJ 08101

TRENTON OFFICE
402 EAST STATE STREET
ROOM 2020
TRENTON, NJ 08608

REPLY TO:

January 10, 2024

**Re: U.S.A. v- KAREEM MEMONOur**
**Docket No.** 24-cr17 (MEF)

Dear Clerk:

A Consent to Transfer Case pursuant to Rule 20 of the Federal Rules of Criminal Procedure has been filed with this District in the above-captioned case.  This District considers the electronic record to be the original pursuant to Federal Rules of Criminal Procedure 49(d), Local Civil Rule 5.2 and paragraph 7 of the Court's Electronic Case Filing Policies and Procedures.  The original records of this Court can be obtained by accessing CM/ECF through PACER.  Certified copies of any document not available through PACER are enclosed.  Kindly acknowledge receipt on the duplicate of this letter, which is provided for your convenience.

Sincerely,

MELISSA E. RHOADS, Clerk

By: JACKELINE BARCO
<u>                              </u>
Deputy Clerk

**RECEIPT ACKNOWLEDGED BY:** <u>                                   </u>
**DATE:** <u>                           </u>
**YOUR DOCKET NUMBER:** <u>                                  </u>.

## Instructions for Retrieving Electronic Case Files

1. Access the CM/ECF website for the District of New Jersey at https://ecf.njd.uscourts.gov

2. Click on:   <u>Link to Electronic Filing System (Live)</u>

3. At the ECF/PACER Login Screen, enter your Court's PACER Login and Password

4. On the CM/ECF toolbar, choose:

- Reports
- Docket Sheet
- Enter Case Number in the following format: **<u>[06-1234]</u>**
- Run Report

   <   To view a document from the docket sheet, click on the blue "underlined" document number;

   <   To download, click on File, Save a Copy and save to your specific directory;

   <   If the document does not have an underlined document number, it is either:

   - A text only entry and no document is attached, or
   - An entry made prior to electronic case filing and the original is enclosed, or
   - The document included an attachment too large for the electronic case filing system and is enclosed.

If you have any questions, our ECF help-desk telephone numbers are as follows:

   <   Camden - 866-726-0726 or 856-757-5285
   <   Newark - 866-208-1405 or 973-645-5924
   <   Trenton - 866-848-6059 or 609-989-2004

MHS/2023R00813

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon.  (MEF) |
| | : | |
| v. | : | Criminal No. 24-17 |
| | : | |
| KAREEM MEMON | : | 18 U.S.C. § 1349 18 |
| | : | U.S.C. § 371 |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the Attorney for the United States for the District of New Jersey, acting under authority conferred by 28 U.S.C. § 515, charges:

## COUNT 1
## (Conspiracy to Commit Health Care Fraud)

1.      Unless otherwise indicated, at all times relevant to this Information:

### Relevant Individuals and Entities

a.      The defendant, KAREEM MEMON ("MEMON"), was a resident of Florida who owned, operated, and/or had a financial or controlling interest in entities (the "MEMON Supply Companies") through which he and his coconspirators generated information and documents amounting to a guarantee that durable medical equipment ("DME") would be reimbursed by Medicare, referred to herein as a "completed doctor's order." As that term was used during MEMON's scheme, a completed "doctor's order" ("DO") was comprised of a prospective patient's name, contact information, insurance information, and a doctor's order or prescription for a

DME orthotic brace, such as a knee, ankle, back, wrist, or shoulder brace for that particular patient.

b.      Aaron Williamsky ("WILLIAMSKY") and Nadia Levit ("LEVIT"), coconspirators not charged herein, were residents of New Jersey who owned, operated, and/or had a financial or controlling interest in several DME supply companies (the "WILLIAMSKY/LEVIT DME Companies"), which primarily supplied DME to Medicare beneficiaries. The WILLIAMSKY/LEVIT DME Companies were enrolled with Medicare as suppliers of DME, and therefore, were authorized to bill Medicare for the supplying of orthotic braces. Pursuant to the requirements described above, the WILLIAMSKY/LEVIT DME Companies were also responsible for acknowledging that any claims made to Medicare complied with the relevant laws, regulations, and program instructions.

c.      Charles Burruss ("BURRUSS") and Armani Adams ("ADAMS"), coconspirators not charged herein, were residents of California who owned, operated, and/or had a financial or controlling interest in several DME supply companies (the "BURRUSS/ADAMS DME Companies"), which primarily supplied DME to Medicare beneficiaries. The BURRUSS/ADAMS DME Companies were enrolled with Medicare as suppliers of DME, and therefore, were authorized to bill Medicare for the supplying of orthotic braces. Pursuant to the requirements described above, the BURRUSS/ADAMS DME Companies were also responsible for acknowledging that any claims made to Medicare complied with the relevant laws, regulations, and program instructions. The WILLIAMSKY/LEVIT DME Companies and the

2

BURRUSS/ADAMS DME Companies will be referred to collectively as the "Subject DME Companies."

d.      As described more fully below, MEMON entered into arrangements with WILLIAMSKY, LEVIT, BURRUSS, ADAMS, and others whereby the Subject DME Companies paid kickbacks and bribes to the MEMON Supply Companies in exchange for the MEMON Supply Companies providing them with completed DOs for DME, which the Subject DME Companies would thereafter bill to and be reimbursed by Medicare and other health care benefit programs, without regard for medical necessity.

### Background on the Medicare Program

e.      Medicare was a federally funded program established to provide medical insurance benefits for individuals aged 65 and older and certain disabled individuals who qualified under the Social Security Act. Individuals who receive benefits under Medicare were referred to as "Medicare beneficiaries."

f.      Medicare was administered by the Center for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

g.      Medicare was divided into four parts, which helped cover specific services: Part A (hospital insurance), Part B (medical insurance), Part C (Medicare Advantage), and Part D (prescription drug coverage).

h.      Medicare Part B covered non-institutional care that included physician services and supplies, such as DME that were needed to diagnose or treat medical conditions and that met accepted standards of medical practice.

i.      Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

j.      In order for a supplier of DME services to bill Medicare Part B, that supplier had to enroll with Medicare as a Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") supplier by completing a Form CMS-855S.

k.      As provided in the Form CMS-855S, to enroll as a DMEPOS supplier, every DMEPOS supplier had to meet certain standards to obtain and retain billing privileges to Medicare, such as, but not limited to, the following: (i) provide complete and accurate information on the Form CMS-855S, with any changes to the information on the form reported within 30 days; (ii) disclose persons and organizations with ownership interests or managing control; (iii) abide by applicable Medicare laws, regulations and program instructions, such as, but not limited to, the Federal Anti-Kickback Statute ("AKS") (42 U.S.C. § 1320a-7b(b)); (iv) acknowledge that the payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions; and (v) refrain from knowingly presenting or causing to be presented a

4

false or fraudulent claim for payment by Medicare and submitting claims with deliberate ignorance or reckless disregard of their truth or falsity.

## **TRICARE**

l.      TRICARE was a health care program of the U.S. Department of Defense ("DoD") Military Health System that provided coverage for DoD beneficiaries worldwide, including active-duty service members, National Guard and Reserve members, retirees, their families, and survivors. The Defense Health Agency, an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.

m.      TRICARE was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

## **CHAMPVA**

n.      The Civilian Health and Medical Program of the Department of Veterans Affairs ("CHAMPVA") was a federal health care benefit program within the Department of Veterans Affairs ("VA"). CHAMPVA was a comprehensive health care program in which the VA shared the cost of covered health care services and supplies with eligible beneficiaries. The eligible categories for CHAMPVA beneficiaries were the spouses or children of veterans who had been rated permanently and totally disabled for a service-connected disability and the surviving spouse or child of a veteran who died from a VA-rated service-connected disability.

o.      In general, the CHAMPVA program covered most health care services and supplies that were medically and psychologically necessary. CHAMPVA was always the secondary payer to Medicare and reimbursed beneficiaries for costs that Medicare did not cover. Health care claims had to have first been sent to Medicare for processing. Medicare electronically forwarded claims to CHAMPVA after Medicare had processed them.

p.      CHAMPVA was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

### Telemedicine

q.      Telemedicine allowed health care providers to evaluate, diagnose, and treat patients remotely—without the need for an in-person visit—by using telecommunications technology, such as the internet or telephone, to interact with a patient.

r.      Medicare deemed telemedicine an appropriate means to provide certain health care related services ("telehealth services") to beneficiaries, including, among other services, consultations, and office visits, only when certain requirements were met. These requirements included, among others, that: (i) the beneficiary was located in a rural area (outside a metropolitan area or in a rural health professional shortage area); (ii) the services were delivered via an interactive audio and video telecommunications system; and (iii) the beneficiary was at a licensed provider's

office or a specified medical facility—not at a beneficiary's home—during the telehealth service furnished by a remote provider.

s.      Telehealth services could be covered by and reimbursable under Medicare, but only if telemedicine was generally appropriate, as outlined above, and only if the services were both ordered by a licensed provider and were reasonable and medically necessary to diagnose and treat a covered illness or condition.

### The Conspiracy

2.      From in or around 2017 through in or around 2020, in the District of New Jersey, and elsewhere, defendant

### KAREEM MEMON

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, a health care benefit program, as defined by 18 U.S.C. § 24(b), namely, Medicare, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Goal of the Conspiracy

3.      The goal of the conspiracy was for MEMON and others to obtain money by submitting or causing the submission of false and fraudulent claims to Medicare and other federal and private health care benefit programs.

## **Manner and Means**

4.    The manner and means by which MEMON and others sought to accomplish the object of the conspiracy included, among other things, the following:

a.    From in or around February 2015 through in or around April 2019, WILLIAMSKY, LEVIT, BURRUSS, ADAMS and others began purchasing and establishing DME companies, including the Subject DME Companies, in New Jersey, New York, and elsewhere to fraudulently bill health care benefit programs, including Medicare, for various orthotic braces.

b.    Through the Subject DME Companies, and/or other billing companies, WILLIAMSKY, LEVIT, BURRUSS, ADAMS, and others submitted and/or caused the submission of false or fraudulent claims to Medicare and other federal and private health care benefit programs for orthotic braces that were: (i) not medically necessary; (ii) never requested by a Medicare beneficiary; (iii) never received by a Medicare beneficiary; and/or (iv) provided based on a DO procured through the payment of kickbacks and bribes.

c.    From in or around 2017 through in or around 2020, the Subject DME Companies entered into kickback agreements with a number of individuals and entities who were able to generate completed DOs (the "DME Suppliers"). The Subject DME Companies paid the DME Suppliers, including MEMON, kickbacks ranging from approximately $125 to $450 for each completed DO.

d.    MEMON and others sold completed DOs from the MEMON Supply Companies to the Subject DME Companies, and others, located in New Jersey

8

and elsewhere.

e.      In general, the DME Suppliers obtained completed DOs for DME for beneficiaries located in the United States and elsewhere through the use of marketing call centers and telemedicine companies with whom they had relationships.

f.      To conceal the payment of kickbacks, the Subject DME Companies entered into sham "Marketing, Business Process Outsourcing and Call Center" agreements ("Marketing Agreements") with the DME Suppliers. On paper, the Marketing Agreements called for the DME Suppliers to provide "raw leads" generated from various advertising campaigns for orthotic braces to the Subject DME Companies. According to the agreements, these raw leads were to consist only of information of individuals responding to the advertisements indicating an interest in orthotic braces.  In reality, the DME Suppliers provided WILLIAMSKY, LEVIT, BURRUSS, ADAMS, and others affiliated with their DME Companies with completed DOs and not "raw leads."

g.      Once the Subject DME Companies received the completed DOs from the DME Suppliers, they arranged for the shipping of the ordered orthotic brace(s) to the beneficiary and electronically submitted and/or caused the electronic

submission of a claim to Medicare and other federal and private health care benefit programs for payment.

h.      Based on the submission of these claims, the Subject DME Companies received from Medicare and other federal and private health care benefit programs payments that they were not entitled to receive.

i.      As a result of MEMON's participation in the health care fraud kickback scheme, from in or around 2017 through in or around 2020, MEMON and his coconspirators caused a loss to Medicare of approximately $11,384,001.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2
## (Conspiracy to Violate the Federal Anti-Kickback Statute)

1.      The allegations in Paragraphs 1 and 3 through 5 of Count 1 are re-alleged here.

2.      From in or around February 2017 through in or around 2020, in the District of New Jersey, and elsewhere, defendant

**KAREEM MEMON**

did knowingly and intentionally conspire and agree with others to commit an offense against the United States, that is, to knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from any person in return for purchasing, ordering, and arranging for, and recommending purchasing and ordering, any good, item, and service, namely, durable medical equipment, for which payment may be made in whole and in part under a Federal health care program, as defined by 18 U.S.C. § 24(b), namely, Medicare, TRICARE, and CHAMPVA, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## Goal of the Conspiracy

3.      The goal of the conspiracy was for MEMON and his coconspirators to unlawfully enrich themselves by soliciting and receiving kickbacks and bribes for the referral of Medicare beneficiaries for DME to the Subject DME Companies and others, for which the DME companies billed to and obtained payments from Medicare and other federal health care benefit programs.

11

**Manner and Means**

4.     The manner and means by which MEMON and others sought to accomplish the object of the conspiracy included, among other things, the following:

a.     As described in Paragraphs 3 through 5 of Count 1, MEMON entered into kickback arrangements with WILLIAMSKY, LEVIT, BURRUSS, ADAMS, and others. Pursuant to those arrangements, MEMON and his coconspirators solicited and received kickbacks for each DO for DME provided to the Subject DME Companies. To conceal the payment of kickbacks, the Subject DME Companies entered into sham Marketing Agreements with MEMON and others.

b.     As a result of MEMON's participation in the health care fraud and kickback scheme, from in or around 2017 through in or around 2020, MEMON and his coconspirators caused a loss to Medicare and other federal health care benefit programs of at least approximately $11,384,001.

c.     From in or around February 2017 through in or around 2020, MEMON, through the MEMON Supply Companies) received kickbacks of approximately $1,486,261.78 for completed DOs provided pursuant to the conspiracy.

**Overt Acts**

5.     In furtherance of the conspiracy and to effect its object, MEMON and others committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.     On or about April 9, 2018, WILLIAMSKY and LEVIT, based in New Jersey, caused a WILLIAMSKY/LEVIT holding company based in New Jersey

12

to provide MEMON kickbacks of approximately $36,000 in exchange for completed DOs for DME.

       b.    On or about April 10, 2018, WILLIAMSKY and LEVIT, based in New Jersey, caused a WILLIAMSKY/LEVIT holding company based in New Jersey to provide MEMON kickbacks of approximately $36,000 in exchange for completed DOs for DME.

      In violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1.     Upon conviction of the offenses alleged in Counts 1 and 2 of this Information, defendant KAREEM MEMON shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the federal health care offenses (as defined by 18 U.S.C. § 24(a)) alleged in this Information, which was approximately $1,486.261.78.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third person;

        (c)     has been placed beyond the jurisdiction of the Court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

_Vikas Khanna/by LMC_

VIKAS KHANNA
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

CASE NUMBER:  24-17 (MEF)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

**v.**

## KAREEM MEMON

# INFORMATION FOR

**18 U.S.C. § 1349**
**18 U.S.C. § 371**

VIKAS KHANNA
*ATTORNEY FOR THE UNITED STATES*
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515
NEWARK, NEW JERSEY

MATTHEW SPECHT
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
(973) 353-6061